UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **JOHN R. CASH REVOCABLE TRUST,** | |
| Plaintiff, | |
| v. | Case No. _____ |
| **THE COCA-COLA COMPANY,** | **JURY DEMAND** |
| Defendant. | |

## COMPLAINT

Plaintiff John R. Cash Revocable Trust (the "Trust") alleges as follows for its Complaint against Defendant The Coca-Cola Company ("Coca-Cola").

## INTRODUCTION

1. John R. Cash ("Johnny Cash") has one of the most legendary and distinctive voices in the history of music.

2. His unique voice has created a special bond between him and his fans.

3. As one court has observed, "A voice is as distinctive and personal as a face. The human voice is one of the most palpable ways identity is manifested. We are all aware that a friend is at once known by a few words on the phone. At a philosophical level it has been observed that with the sound of a voice, 'the other stands before me.' A fortiori, these observations hold true of singing, especially singing by a singer of renown. The singer manifests herself in the song. To impersonate her voice is to pirate her identity." *Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988) (citation omitted).

4. This case arises from Coca-Cola's pirating Johnny Cash's voice in a nationwide advertising campaign to enrich itself—without asking for permission or providing any

compensation to the humble man and artist who created the goodwill from which Coca-Cola now profits.

5. Stealing the voice of an artist is theft. It is theft of his integrity, identity, and humanity.

6. For that very reason, the Tennessee General Assembly recently enacted the Ensuring Likeness, Voice, and Image Security Act of 2024 (the "ELVIS Act"), Tenn. Code Ann. § 47-25-1101 *et seq.*, which expressly protects against the unauthorized commercial use of one's "voice."

7. The Trust brings this lawsuit to protect the voice of Johnny Cash—and to send a message that protects the voice of all of the artists whose music enriches our lives.

## PARTIES

8. The Trust is a revocable trust organized under the laws of the State of Tennessee with its principal place of business in Nashville, Tennessee.

9. Catherine C. Sullivan is the sole trustee of the Trust. Ms. Sullivan is domiciled in, and a citizen of, Nashville, Tennessee. The Trust is a citizen of Tennessee.

10. Coca-Cola is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Georgia. Coca-Cola is a citizen of Delaware and Georgia. Coca-Cola may be served with service of process via its Tennessee registered agent, CT Corporation System at 300 Montvue Rd, Knoxville, TN 37919-5546.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because one of the Trust's causes of action arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

12. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the Trust's state-law causes of action because they are so related to the cause of action under Section 43(a) of the Lanham Act that they form part of the same case or controversy under Article III of the United States Constitution.

13. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy (far) exceeds $75,000 and this action is between "citizens of different States[.]"

14. This Court has personal jurisdiction over Coca-Cola. Coca-Cola has been registered to do business in Tennessee since January 3, 1961. Coca-Cola sells its products to Tennessee consumers. Coca-Cola marketed the advertisement at issue to Tennessee consumers to induce those Tennessee consumers to purchase Coca-Cola products that Coca-Cola sells in Tennessee. Further, Coca-Cola knowingly caused injury to the Trust in Tennessee by marketing the advertisement at issue in Tennessee.

15. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim[s] occurred[]" in this judicial district.

## FACTUAL ALLEGATIONS

### I. JOHNNY CASH

16. Johnny Cash is one of the most iconic and accomplished recording artists in the history of popular music. He is one of the best-selling music artists of all time, having sold more

than 90 million records worldwide. He has been inducted into the Country Music Hall of Fame, the Rock and Roll Hall of Fame, and the Gospel Music Hall of Fame.

17. Johnny Cash died in 2003 in Tennessee.

18. Johnny Cash has one of the most recognizable voices in the history of popular music. Known for his distinctive bass-baritone, listeners immediately recognize both his speaking and singing voice.

19. The Trust owns all right, title, and interest in and to the name, image, likeness, and voice of Johnny Cash.

20. Since Johnny Cash's death, the Trust has continuously engaged in the commercial exploitation of his rights of publicity, including his voice (the "Voice"). In fact, his Voice is so unique and valuable that the Trust has been able to secure licenses specifically for the use of his Voice.

21. Among other things, the Trust has licensed the operation of the Johnny Cash Museum in Nashville, Tennessee. On two different occasions, the Trust licensed the Voice for Super Bowl advertisements. Johnny Cash's spoken word tribute to patriotism, "Ragged Old Flag," aired during Super Bowls LI, LIV, and LVII. His recording of "Personal Jesus" aired during Super Bowl LIX.

22. The Trust has also decided not to authorize the use of Johnny Cash's name, image, likeness, or Voice in connection with certain products and services.

23. The Trust closely safeguards the legacy of Johnny Cash, including his Voice. Due to the compelling appeal of his legacy, character, and unique contributions to popular culture and music, his Voice deserves to be treated with respect and used for commercial advertising purposes only with the Trust's consent.

## II. COCA-COLA

24. Coca-Cola is a multinational corporation that manufactures, sells, and markets soft drinks, including Coca-Cola, among other products. Coca-Cola is the world's largest beverage company.

25. Coca-Cola is a public company listed on the New York Stock Exchange and is a component of the Dow Jones Industrial Average and S&P 500 and S&P 100 indices.

26. As of November 2025, Coca-Cola's market capitalization exceeds $300 billion.

27. In 2024, Coca-Cola's revenues exceeded $47 billion.

28. Coca-Cola has a long history of entering into endorsement agreements with entertainers, musicians, and athletes to induce consumers to purchase its products.

29. Coca-Cola touts such endorsements on its website as part of its "DNA." Coca-Cola emphasizes that its first celebrity endorsements were with singers:

> **Sport & Entertainment partnerships are part of the DNA of The Coca-Cola Company**
>
> In 1900, Coca-Cola signed its first celebrity endorsement - the light opera & dance hall singer, Hilda Clark. Continuing the celebrity musical connection that has become so important to Coca-Cola's communication, the Metropolitan Opera diva Lillian Nordica appeared in Coca-Cola's first national magazine ad in 1905.

THE COCA-COLA COMPANY, *Sports & Entertainment*, available at https://www.coca-colacompany.com/about-us/sports-and-entertainment (last accessed Nov. 25, 2025).

30. Coca-Cola takes pride in connecting to consumers through its music partnerships:



*Id.*

31. Since 2008, Coca-Cola has "created a signature music program in several countries featuring live studio-recording music performances by established and emerging artists" and "brought musical performances live-streamed from the homes of 100 artists around the world." *Id.*

32. Among other endorsement deals, Coca-Cola entered into an endorsement deal with Taylor Swift, which included advertisements exploiting her voice. YOUTUBE, *Taylor Swift: Stay Extraordinary (Diet Coke Ad)*, available at https://www.youtube.com/watch?v=L0KmvWL6Dfw (last accessed Nov. 25, 2025).

33. Coca-Cola knows that it needs a license to exploit, for commercial advertising purposes, the name, image, likeness, and voice of artists and musicians. Coca-Cola has entered into such licenses in the past.

### III. THE ELVIS ACT

34. On March 21, 2024, Governor Bill Lee signed into law the ELVIS Act, Tenn. Code Ann. § 47-25-1101 *et seq.*

35. The signing ceremony occurred in downtown Nashville at Robert's Western World on Broadway. Among others, country music stars Luke Bryan and Chris Jansen joined Governor Lee on stage:



36. A broad array of industry groups supported enactment of the ELVIS Act, including the Recording Industry of America, Academy of Country Music, American Association of Independent Music, The Americana Music Association, American Society of Composers, Authors and Publishers, Broadcast Music, Inc., Church Music Publishers Association, Christian Music Trade Association, Folk Alliance International, Global Music Rights, Gospel Music Association, The Living Legends Foundation, Music Artists Coalition, Nashville Musicians Association, National Music Publishers' Association, Rhythm & Blues Foundation, Screen Actors Guild – American Federation of Television and Radio Artists, Society of European Stage Authors and

Composers, Songwriters of North America, The Recording Academy, and Tennessee Entertainment Commission.

37. The ELVIS Act became effective on July 1, 2024.

38. The ELVIS Act amended Tennessee's statutory right of publicity by adding explicit protections for a person's "voice."

39. The ELVIS Act defines a "[v]oice" as "a sound in a medium that is readily identifiable and attributable to a particular individual, regardless of whether the sound contains the actual voice or a simulation of the voice of the individual." *Id.* § 47-25-1102(6).

40. The ELVIS Act affirms that "[e]very individual has a property right in the use of that individual's name, photograph, voice, or likeness in any medium in any manner." *Id.* § 47-25-1103(a).

41. To safeguard that property right, the ELVIS Act provides that "[a]ny person who knowingly uses or infringes upon the use of an individual's name, photograph, voice, or likeness in any medium, in any manner directed to any person other than such individual, for purposes of advertising products, merchandise, goods, or services, or for purposes of fundraising, solicitation of donations, purchases of products, merchandise, goods, or services, without such individual's prior consent, or, in the case of a minor, the prior consent of such minor's parent or legal guardian, or in the case of a deceased individual, the consent of the executor or administrator, heirs, or devisees of such deceased individual, is liable to a civil action." *Id.* § 47-25-1105(a)(1).

42. Further, "[a]person is liable to a civil action if the person publishes, performs, distributes, transmits, or otherwise makes available to the public an individual's voice or likeness, with knowledge that use of the voice or likeness was not authorized by the individual or, in the

8

Case 3:25-cv-01373   Document 1   Filed 11/25/25   Page 8 of 17 PageID #: 8

case of a minor, the minor's parent or legal guardian, or in the case of a deceased individual, the executor or administrator, heirs, or devisees of such deceased individual." *Id.* § 47-25-1105(a)(2).

43. An individual whose rights have been infringed under the ELVIS Act "is entitled to recover the actual damages suffered as a result of the knowing use or infringement of such individual's rights and any profits that are attributable to such use or infringement which are not taken into account in computing the actual damages." *Id.* § 47-25-1106(d)(1).

IV. **COCA-COLA UNLAWFULLY EXPLOITED JOHNNY CASH'S VOICE**

44. In or around August 20, 2025, Coca-Cola initiated a new, nationwide advertising campaign for the 2025 NCAA college football season titled "Fan Work Is Thirsty Work."

45. The advertising campaign features a television commercial titled "Go the Distance" (the "Infringing Ad"). *See* YOUTUBE, *Coca Cola | Go the Distance*, accessible at https://www.youtube.com/watch?v=MJ0lgc5ihL0 (last accessed Nov. 25, 2025).

46. Coca-Cola caused the Infringing Ad to run throughout the college football season on ABC, NBC, FOX, FS1, BTN, TNT, ESPN, ESPN2, TNT, TBS, and TRUTV and across social and digital platforms.

47. The Infringing Ad depicts fans drinking Coca-Cola and Coca-Cola Zero Sugar.

48. The Infringing Ad includes imagery associated with several of Coca-Cola's NCAA partner schools, including the University of Michigan, the University of Notre Dame, the University of Southern California, Louisiana State University, and The Ohio State University.

49. The visual images in the Infringing Ad are synced to a sound recording containing a male singing voice.

50. The singing voice in the Infringing Ad sounds remarkably like the Voice of Johnny Cash.

51. The singing voice in the Infringing Ad is readily identifiable and attributable to Johnny Cash.

52. But, the singing voice in the Infringing Ad is *not* the actual Voice of Johnny Cash.

53. Coca-Cola commissioned an advertising agency (the "Advertising Agency") to create the Infringing Ad.

54. On behalf of Coca-Cola, the Advertising Agency commissioned an original musical composition for inclusion in the Infringing Ad.

55. On behalf of Coca-Cola, the Advertising Agency hired a Johnny Cash tribute singer (the "Sound-Alike Singer") to sing the vocal track for the Infringing Ad.

56. The Sound-Alike Singer advertises himself as "The No. 1 Johnny Cash Tribute Show" and "The Man in Black — A Tribute to Johnny Cash." On information and belief, the Sound-Alike Singer's only entertainment talent as a singer is to impersonate Johnny Cash.

57. Thus, on behalf of Coca-Cola, the Advertising Agency selected the Sound-Alike Singer to sing the vocal track for the specific purpose of ensuring that the Infringing Ad sounded as close as possible to the Voice.

58. On behalf of Coca-Cola, the Sound-Alike Singer sang the original musical composition commissioned by the Advertising Agency.

59. On behalf of Coca-Cola, the sound recording of the original musical composition—which contains the voice that is readily identifiable and attributable to Johnny Cash—was incorporated into the Infringing Ad.

60. In a Facebook post dated August 30, 2025, the Sound-Alike Singer made clear that the purpose of the Infringing Ad was to draw upon the goodwill associated with the Voice of Johnny Cash:



61. The Infringing Ad tricked consumers into believing that the Infringing Ad contained the actual Voice of Johnny Cash.

62. In response to the Sound-Alike Singer's August 30, 2025 Facebook post, consumers wrote:

> I tracked you/this down to facebook(?!) Specifically to tell/ask/beg you to make this a full on song.
>
> I heard the commercial, rewinded it listened to it again and was perplexed that there was a Johnny Cash song I hadn't heard before...

***

> Thought it was a new track by the Man in Black himself! Is the track available for purchase/download anywhere? No luck searching so far.

63. Consumers continued to express their confusion in response to a separate August 30, 2025 Facebook post by the Sound-Alike Singer:

> Geesh! I thought this was Johnny Cash! My research to find the song led me here.. U sound just like him!🔥🔥

***

> **The Man In Black - A Tribute To Johnny Cash** it sounded like Cash but I had never heard it before. Is there a full version somewhere?

***

> Fantastic!!!❤️❤️❤️ I, too, thought it was Johny Cash! What an awesome voice!❤️❤️❤️

64. On October 10, 2025, the Sound-Alike singer made another Facebook post regarding the Infringing Ad, and consumers continued to remark upon the ongoing confusion:

> Holy shit I watched that commercial and immediately was like hey it's Cash. But I was like what song is that, I said? Amazing to now find out it was You!!! That's awesome!!! Congratulations!!!!

***

> I wonder how many people Googled the lyrics and 'Johnny Cash' to find the song from this commercial, only to find the FIRST and BEST Johnny Cash tribute singer ever. I saw him live once, and this commercial raised the hair on the back of my next, just like he did decades ago. Just like you do now.

65. Despite capitalizing on the intrinsic value of Johnny Cash's legendary Voice, Coca-Cola never even bothered to ask the Trust for a license.

66. Through the Infringing Ad, Coca-Cola knowingly used and infringed Johnny Cash's Voice for the purpose of advertising its products, merchandise, goods, and services without the consent of the Trust.

67. The Trust learned about the Infringing Ad for the first time on November 14, 2025.

68. As of the date of the filing of this Complaint, Coca-Cola continues to air the Infringing Ad and exploit the Voice without authorization.

# CAUSES OF ACTION

## COUNT I
### (Violation of the ELVIS Act, Tenn. Code Ann. § 47-25-1101 *et seq.*)

69. The Trust realleges all of the preceding paragraphs.

70. The Trust owns Johnny Cash's Voice.

71. The Infringing Ad contains the Voice.

72. The singing voice in the Infringing Ad is readily identifiable and attributable to Johnny Cash.

73. Through the Infringing Ad, Coca-Cola knowingly used and infringed the Voice for the purpose of advertising its products, merchandise, goods, and services.

74. Coca-Cola exploited the Voice in the Infringing Ad without authorization from the Trust.

75. Coca-Cola therefore violated the ELVIS Act.

76. Coca-Cola's violation of the ELVIS Act has caused damaged to the Trust in an amount to be established at trial. That amount of damages far exceeds $75,000.

77. As a result of Coca-Cola's violation of the ELVIS Act, the Trust is also entitled to recover any profits attributable to Coca-Cola's unlawful exploitation of the Voice. Upon information and belief, those profits far exceed $75,000.

78. Coca-Cola's infringing conduct has caused irreparable harm to the Trust.

79. Coca-Cola violated the ELVIS Act intentionally, fraudulently, maliciously, and/or recklessly.

80. Coca-Cola has a long history of entering into endorsement agreements with artists in order to exploit their name, image, likeness, and voice for commercial purposes.

81. Coca-Cola is a sophisticated, wealthy organization with access and ties to knowledgeable marketing professionals and experienced legal counsel.

82. Despite knowing that it needed a license to exploit the Voice, Coca-Cola chose not to ask the Trust for a license.

83. At the very least, Coca-Cola acted in conscious disregard of a substantial and unjustifiable risk that exploiting the Voice without a license from the Trust violated the ELVIS Act.

84. Accordingly, the Trust is also entitled to punitive damages in an amount to be determined at trial.

## COUNT II
**(Violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*)**

85. The Trust realleges all of the preceding allegations.

86. The Tennessee Consumer Protection Act of 1977 ("TCPA") protects consumers from unfair and deceptive business practices. *See* Tenn. Code Ann. § 47-18-101 *et seq.*

87. Unfair and deceptive business practices include (1) "[c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services[,] (2) [c]ausing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another[,]" (3) and "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that such person does not have[.]" *Id.* § 47-18-104(b)(2), (3), (5).

88. Coca-Cola's use of the Infringing Ad violates these provisions by causing likelihood of confusion or misunderstanding as to the Trust's sponsorship, approval, affiliation,

connection, or association with Coca-Cola and by representing that Coca-Cola has a sponsorship, approval, status, affiliation, or connection with the Trust that does not exist.

89. Coca-Cola's violation of the TCPA has caused the Trust to suffer an ascertainable loss of money and/or property.

90. Coca-Cola's violation of the TCPA has also caused irreparable harm to the Trust.

91. Pursuant to Tenn. Code Ann. § 47-18-109, the Trust is entitled to recover actual damages in an amount to be proven at trial. Because Coca-Cola violated the TCPA willfully and/or knowingly, the Trust is entitled to treble damages. The Trust is also entitled to recover its attorneys' fees and costs.

## COUNT III
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a))

92. The Trust realleges all of the preceding allegations.

93. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits false endorsements.

94. False endorsement occurs when a celebrity's identity is used in connection with a product or service in such a way that consumers are likely to be misled about the celebrity's sponsorship or approval of the product or service.

95. Consumers who hear the Voice immediately recognize Johnny Cash as the source of the Voice. The Voice is distinctive, part of his celebrity identity, and functions as a mark, particularly when used in connection with advertisements for goods and services.

96. The use of the singing voice in the Infringing Ad is likely to cause confusion, mistake, or deception as to whether the Trust has sponsored, endorsed, or otherwise approved of the use of the Voice in the Infringing Ad.

97. In fact, consumer have actually been confused by Infringing Ad, as demonstrated above.

98. The Infringing Ad suggests a connection or affiliation with the Trust, as the owner of the Voice, which does not exist.

99. The Infringing Ad has caused irreparable harm to the Trust.

100. Coca-Cola willfully and deliberately violated Section 43(a) of the Lanham Act. As a result of that unlawful conduct, the Trust has been damaged in an amount to be determined at trial.

101. Pursuant to 15 U.S.C. § 1117(a), the Trust is entitled to recover actual damages in an amount to be determined at trial, Coca-Cola's profits, and the costs of this action.

102. Further, Coca-Cola's willful conduct warrants an award of enhanced damages. This is an exceptional case, and the Trust is entitled to award of attorneys' fees pursuant to 15 U.S.C. § 1117.

## JURY DEMAND

103. The Trust demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

The Trust respectfully requests that the Court:

A. Enter judgment in favor of the Trust and against Coca-Cola;

B. Preliminarily enjoin Coca-Cola from exploiting the Infringing Ad;

C. Permanently enjoin Coca-Cola from exploiting the Infringing Ad;

D. Award the Trust compensatory damages in an amount to be determined at trial;

E. Award the Trust the profits of Coca-Cola attributable to its unlawful conduct, in an amount to be determined at trial;

F. Award the Trust punitive damages in an amount to be determined at trial;

G. Award the Trust treble damages;

H. Award the Trust prejudgment and post-judgment interest;

I. Award the Trust its attorneys' fees and costs; and

J. Grant such other and further relief as the Court deems proper.

Respectfully submitted,

s/ Tim Warnock
Tim Warnock (TN Bar No. 12844)
LOEB & LOEB LLP
35 Music Square East, Suite 310
Nashville, TN 37203
(615) 749-8300
(615) 749-8308 (facsimile)
twarnock@loeb.com

s/ Keane Barger
Keane Barger (TN Bar No. 33196)
LOEB & LOEB LLP
901 New York Avenue NW
Suite 300 East
Washington, DC 20001
(202) 618-5000
(202) 618-5001 (facsimile)
kbarger@loeb.com

*Counsel for the John R. Cash Revocable Trust*